**Opinion filed July 30, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00229-CR

_____

## TONY CURTIS MCCOY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR58515**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Tony Curtis McCoy, of sexual assault. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A) (West 2026). Upon Appellant's plea of "true" to the habitual offender enhancement allegations, the jury sentenced Appellant to confinement for forty years in the Institutional Division of the Texas Department of Criminal Justice. In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction. We affirm.

*Background Facts*

The indictment alleged that Appellant intentionally and knowingly penetrated the sexual organ of A.K. with his sexual organ, his finger, or a sex toy without A.K.'s consent.

A.K. testified that she gave Morris Pardue a ride home from a Stripes convenience store. She stated that there were several people at Pardue's home, including Appellant, whom she had never met. After spending time visiting with Pardue, A.K. and Pardue had consensual sex in Pardue's bedroom. Pardue then left the bedroom while A.K. remained, eventually falling asleep.

When asked "[w]hat is the next thing you remember?" A.K. replied:

> I remember feeling someone touching me and kissing me, like-- I'm going to -- let me demonstrate.
>
> So I'm laying towards the wall, and I remember feeling somebody touching me, kissing me, you know, feeling my boobs. You know, I'm thinking it's him, thinking [Pardue]. So he's touching me, and then I remember feeling like, oh, okay. I'm thinking he's going for more or less round two, right? So I -- I'm laying on the side and so he starts to, like -- I feel like what I thought was his penis, like, coming in, and I remember like being half asleep, like I was still like half asleep, but what alerted me was that --
>
> . . . .
>
> So I'm laying there, and he tries to, like, you know how -- okay. We're all adults. You know how a man, like, kind of moves up with his penis and kind of feels where it is? He puts it in, but I remember feeling like -- just this feeling like it hurt, like it was just this kind of -- like the same feeling you would get, like, as a woman, like you had like a tampon stuck, like you're kind of pulling out. And I remember thinking, like, let me change positions. And so when I turned around, there he was. [Appellant].

2

A.K. testified that Appellant penetrated her vagina. At the time it occurred, A.K. believed that Appellant penetrated her vagina with his penis. However, she later learned that it was a dildo.

A.K. testified that she was asleep and facing the wall when Appellant entered the bedroom. She recalled that the person that entered the bed was mumbling something, but she was "half asleep." She denied ever consenting to having sexual intercourse with Appellant or permitting him to penetrate her vagina with a dildo. Further, she denied ownership of the dildo, and she testified that she had never seen it before. A.K. testified that the penetration occurred less than a minute before she discovered it was Appellant. When she discovered it was Appellant, she began screaming and crying and she pushed Appellant out of the way.

A.K. first called Pardue. Pardue reacted by yelling at Appellant. A.K. testified that Appellant denied doing anything to her and that he offered to pay her. A.K. then called 9-1-1. A.K.'s 9-1-1 call and bodycam footage from the officers that responded were admitted into evidence. They depicted A.K. being upset and crying while reporting the incident to law enforcement.

Pardue testified that Appellant is a family friend and that he sometimes stays at the house where Pardue lives. He testified that A.K. was asleep in his bed when he left the bedroom. Pardue denied saying anything to Appellant with respect to A.K. upon leaving the bedroom Pardue was outside of the house on the porch when A.K. called him to report the incident. He testified that A.K. was panicking when he returned to the bedroom. Pardue told Appellant to get dressed. Pardue testified that Appellant stated that A.K. was lying.

Sergeant Cody Easley of the Midland Police Department was dispatched to Pardue's house in response to A.K.'s 9-1-1 call. He reported that A.K. was distraught and crying hysterically. Sergeant Easley stated that he saw Appellant

3

upon arrival and that Appellant told the police that "there's nothing going on here, there's no problem here." A.K. positively identified Appellant at the scene.

Officer Steven Acosta of the Midland Police Department transported Appellant to the police station. While doing a pat down search, he discovered a dildo strapped to Appellant's waist. Officer Acosta testified that Appellant told him that the individual he was with "wanted it in the anus."

Detective Rosie Rodriguez of the Midland Police Department interviewed A.K., Pardue, and Appellant on the day of the incident. Detective Rodriguez described A.K. as being "low-key, she had her head bowed down. She would shake, her voice would tremble, and she did cry." Detective Rodriguez stated that A.K.'s and Pardue's accounts were consistent with each other.

Appellant admitted to Detective Rodriguez that he penetrated A.K.'s vagina with the dildo. He advised her that he thought that A.K. and Pardue had set him up based on a previous conflict that he had with Pardue. In that regard, Appellant told Detective Rodriguez that Pardue told him that there was a woman in the back of the house that was talking about being interested in Appellant, and that Pardue basically told him to go back to where A.K. was located. However, Appellant also told Detective Rodriguez that A.K. told him herself to lay down with her. Appellant also told Detective Rodriguez that A.K. provided the dildo and that she removed it from her purse.

Detective Rodriguez described Appellant's statements as being inconsistent because he changed his story several times. She also believed that Appellant was rehearsing what he was going to say to her when she was outside of the interview room.[1] On one of these occasions, Appellant mumbled to himself that A.K. was

---

[1] The police recorded Appellant the entire time he was inside of the interview room at the police station, including approximately one hour and fifteen minutes before Detective Rodriguez entered the room

4

asleep when he entered the room. Specifically, Detective Rodriguez testified that Appellant said to himself, "I walked in, I woke her up, I talked to her, and then all this."

*Analysis*

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence supporting his conviction. We note at the outset that there is no dispute that penetration occurred. The question before us is whether the evidence established that the penetration was without A.K.'s consent. Specifically, Appellant asserts that the State did not prove beyond a reasonable doubt that the alleged penetration was without consent, that A.K. was not aware that sexual activity was occurring, and that Appellant knew that A.K. was asleep or unaware of the penetration.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted.

---

while Appellant essentially talked to himself. The recording was not offered into evidence during the guilt-innocence phase, but rather was offered by Appellant during punishment. Our review of the sufficiency of the evidence is necessarily limited to the evidence before the jury at the time it rendered its guilty verdict. *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993). Accordingly, our review of the sufficiency of the evidence does not include the entire recording, but rather only those portions testified about by Detective Rodriguez. *See id.*

*Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

As relevant to this case, a person commits the offense of sexual assault when the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means without that person's consent. *See* PENAL § 22.011(a)(1)(A). Section 22.011(b) defines fourteen manners and means by which the State may prove the "without consent" element of the offense. *See* PENAL § 22.011(b); *Higgins v. State*, No. 02-24-00055-CR, 2025 WL 1774762, at *14 (Tex. App.—Fort Worth June 26, 2025, no pet.) (mem. op., not designated for publication). Unless the State alleges a specific manner and means in the indictment, the State does not have to prove that the conduct meets one of the definitions in Section 22.011(b) because such conduct is not an element of the offense required to

6

be included in the indictment.[2] *Higgins*, 2025 WL 1774762, at *14 (citing *Fongang v. State*, No. 07-11-00358-CR, 2013 WL 5460002, at *2 (Tex. App.—Amarillo Sept. 30, 2013, no pet.) (mem. op., not designated for publication)). Here, the indictment simply alleged that Appellant penetrated A.K.'s sexual organ without her consent. Therefore, a hypothetically correct jury charge in this case would have authorized conviction if the jury found that the sexual assault was without A.K.'s consent for any of the statutory reasons supported by the evidence.[3] *Id.*

Appellant's evidentiary challenge focuses on two of the enumerated definitions—subsection (b)(3) ("the other person has not consented and the actor knows the other person is unconscious or physically unable to resist") and subsection (b)(5) ("the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring"). In this regard, the trial court's charge included an instruction under subsection (b)(5) in its abstract portion, but the application paragraph did not reference subsection (b)(5). Instead, the application paragraph simply required that the penetration "was without the consent of AK," just as alleged in the indictment. Further, the charge contained no reference to an instruction under subsection (b)(3).

Appellant asserts that, from A.K.'s testimony, she "was neither asleep or unconscious or physically unable to resist when the sexual activity and penetration occurred. She was, therefore, very much aware and jointly participating in the sexual activity." Appellant contends that the State failed to prove an essential element of

---

[2]As noted in *Higgins*, a different result may be required if the defendant files a notice-based motion to quash. 2025 WL 1774762, at *14. Here, Appellant did not file a motion to quash the indictment.

[3]If the indictment had alleged a particular manner or means for "without consent" under Section 22.011(b), that allegation would have become an element which the State would be required to prove beyond a reasonable doubt. *See Geick v. State*, 349 S.W.3d 542, 547–48 (Tex. Crim. App. 2011) (When pleaded, a statutory definition becomes an element of the offense that the State must prove.).

7

the indicted offense because the evidence showed that A.K. "was awake and aware through the duration of the sexual activity up to and including penetration." This argument implicates the definition in Section 22.011(b)(3), which was not alleged in the indictment. *See* PENAL § 22.011(b)(3). Because the indictment did not allege that A.K. was asleep, unconscious, or physically unable to resist, these matters were not essential elements of the offense. *See Higgins*, 2025 WL 1774762, at *14; *Fongang*, 2013 WL 5460002, at *2–4.

Appellant's evidentiary challenge focuses on A.K.'s state of consciousness rather than whether she actually consented to Appellant's act of penetration. In that regard, Appellant does not indicate in his appellate argument how or when A.K. consented to the penetration. At trial, Appellant indicated in his statement to Detective Rodriguez that either A.K. herself expressly consented to his act of penetration or that Pardue essentially "consented" for her.[4] In his closing statements, Appellant's trial counsel argued that because A.K. did not rebuff Appellant's act of kissing her neck, he did not know that she was not consenting to his act of penetration. Appellant asserted that A.K. could not have confused him with Pardue based on differences in their voices.[5] He further argued that Appellant stopped as soon as A.K. protested. Conversely, A.K. was adamant that she never consented to having any physical contact with Appellant. As noted in her testimony, A.K. believed that she was having intimate relations with Pardue for a second time when in fact it was Appellant that was having physical contact with her.

Section 22.011(b)(5) provides that a sexual assault is without consent if "the other person has not consented and the actor knows the other person is unaware that

---

[4]We are unaware of any circumstance under the law where one person can give consent for another person to be sexually penetrated.

[5]From the appellate record, we are unable to discern any difference between Appellant's and Pardue's voices.

the sexual assault is occurring." PENAL § 22.011(b)(5). Thus, there are two components to subsection (b)(5): 1) whether the complainant consented; and 2) the defendant's subjective awareness that the complainant is unaware that a sexual assault is occurring. Here, the evidence is replete with testimony from A.K. that she did not consent to any physical contact with Appellant. In this regard, the jury was presented with A.K.'s trial testimony as well as the recordings and police observations from the scene reflecting her emotional response to the event. The question of whether A.K. consented to having physical contact *with Appellant*, including whether she mistook Appellant for Pardue, were credibility determinations for the jury to make. Under the *Jackson* standard of review, we defer to the jury's determination of these questions in support of its guilty verdict. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The other component of Section 22.011(b)(5) focuses on Appellant's subjective awareness of whether he knew A.K. was unaware that a sexual assault was occurring. In this regard, Appellant's knowledge of whether A.K. mistakenly identified him for Pardue was another issue for the jury to resolve. If Appellant knew that A.K. was mistaken, he was subjectively aware that she was unaware that a sexual assault was occurring.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence from which a rational jury could have logically found beyond a reasonable doubt that A.K. did not consent to Appellant's act of penetrating her vagina with the dildo and that Appellant was subjectively aware that A.K. did not realize that he was the person committing the act—an act to which she had not consented to having with him. *See* PENAL § 22.011(b)(5). Accordingly, we overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


July 30, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.